UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOHNATHAN NATHANS, | : | |
| Plaintiff, | : | |
| BASEBALL AND SPORTS | : | |
| ASSOCIATES, LLC, | : | |
| Intervenor Plaintiff, | : | |
| | : | |
| v. | : | 3:09-cv-00256-WWE |
| | : | |
| JOSE OFFERMAN and THE LONG ISLAND | : | |
| DUCKS PROFESSIONAL BASEBALL | : | |
| CLUB, LLC, | : | |
| Defendants. | : | |

**MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT**

Plaintiff Johnathan Nathans ("Nathans") filed this action against defendants Jose

Offerman ("Offerman") and the Long Island Ducks Professional Baseball Club, LLC ("Ducks")

alleging (1) assault and battery, (2) negligence, and (3) reckless assault and battery, all stemming

from an altercation during a professional baseball game in Bridgeport, Connecticut on August 14,

2007.  Defendant Ducks have moved for summary judgment in its favor and against plaintiff

Nathans on plaintiff's entire case against it, as well as against the intervening plaintiff Baseball

and Sports Associates, LLC.

First, the Ducks argue that it cannot be held vicariously liable for defendant Offerman's

conduct because his conduct was outside the scope and course of his employment with the Ducks

and did not further the interests or business of the Ducks.  Second, the Ducks contend that as a

co-participant in a team contact sport, Offerman cannot be held liable to plaintiff.  Accordingly,

as a plaintiff cannot recover more compensatory damages from a principal than it could from an

agent-tortfeasor, the Ducks, as principal, cannot be held liable to plaintiff for Offerman's tortious

conduct.   Finally, the Ducks assert that even if it could be held liable under principles of

respondeat superior, it cannot be held liable for punitive damages.

For the following reasons, defendant's motion for summary judgment will be granted in

part and denied in part.

## BACKGROUND

Defendant Offerman was the lead-off hitter for the Long Island Ducks in their August

2007 matchup against plaintiff Nathans and the Bridgeport Bluefish.  The Ducks and Bluefish are

professional baseball teams in the independent Atlantic League of Professional Baseball.

Offerman, a former Major League All-Star, at 38 years old, was in the twilight of his career.

Nathans was an experienced catcher who had been part of the Boston Red Sox farm club and was

playing in the Atlantic League to gain game experience and further his own career as a catcher.

Offerman stepped to the plate and hit the first pitch of the game over the outfield wall for

a home run.  Bluefish pitcher Matt Beech faced eight of nine Ducks batters in the first inning,

allowing three runs.  The Ducks were still leading three to zero when the team came up to bat

again in the second inning.  After the Ducks' ninth batter flied out to center field, Offerman came

up for his second at-bat of the game.  Beech threw the first pitch, a cut fastball, for a strike

(swinging).  Beech decided to throw the same pitch again.  This time, the pitch moved downward

out of the strike zone and struck Offerman on the left calf.  Because he was hit by a pitch, the

batter was awarded first base.  Instead of taking his base, Offerman charged the pitcher's mound

with his baseball bat in hand.

Matt Beech stood his ground when he saw Offerman approaching with the bat.

Meanwhile, plaintiff Nathans, the catcher for the Bluefish, chased Offerman toward the middle

of the infield.  Both benches cleared.  In the melee that ensued, Nathans was struck in the head by Offerman's bat.

Once order was restored, Offerman was ejected from the game by the umpires.  Late that night, Offerman was arrested on two counts of Assault in the Second Degree.  As a result of the incident, he was indefinitely suspended by the Executive Director of the League and never played baseball for the Ducks again.

## DISCUSSION

A motion for summary judgment must be granted if the pleadings, discovery materials before the court and any affidavits show that there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A dispute regarding a material fact is genuine if there is sufficient evidence that a reasonable jury could return a verdict for the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute.  Am. Int'l Group, Inc. v. London Am. Int'l Corp., 664 F.2d 348, 351 (2d Cir. 1981).

If a nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, then summary judgment is appropriate.  Celotex Corp., 477 U.S. at 323.  If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met.  Liberty Lobby, 477 U.S. at 24.  The mere existence of a scintilla of evidence in support of the nonmoving party's position is insufficient; there must be evidence on which the jury could

reasonably find for him.  See Dawson v. County of Westchester, 373 F.3d 265, 272 (2d Cir.

2004).

On summary judgment, the court resolves all ambiguities and draws all permissible

factual inferences in favor of the nonmoving party.  See Patterson v. County of Oneida, 375 F.3d

206, 218 (2d Cir. 2004).  If there is any evidence in the record from which a reasonable inference

could be drawn in favor of the opposing party on the issue on which summary judgment is

sought, summary judgment is improper.  See Security Ins. Co. of Hartford v. Old Dominion

Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004).

**Respondeat Superior**

The Ducks assert that it cannot be held vicariously liable for defendant Offerman's

conduct because his conduct was outside the scope and course of his employment with the Ducks

and did not further the interests or business of the Ducks.  "[U]nder the common-law principle of

respondeat superior, an employer is vicariously liable for compensatory damages arising out of

the tortious conduct of his employee when that conduct occurs during the course of the

employee's employment."  Matthiessen v. Vanech, 266 Conn. 822, 839 (2003).  "[T]o hold an

employer liable for the intentional torts of his employee, the employee must be acting within the

scope of his employment and in furtherance of the employer's business. . . . But it must be the

affairs of the principal, and not solely the affairs of the agent, which are being furthered in order

for the doctrine to apply."  Cornelius v. Department of Banking, 94 Conn. App. 547, 557 (2006).

"Ordinarily, it is a question of fact as to whether a wilful tort of the servant has occurred

within the scope of the servant's employment and was done to further his master's business.  But

there are occasional cases where a servant's digression from duty is so clear-cut that the

disposition of the case becomes a matter of law." A-G Foods, Inc. v. Pepperidge Farm, Inc., 216

Conn. 200, 207 (1990).  Connecticut courts draw a distinction between unauthorized or

misguided efforts by employees in furtherance of an employer's business - for which employers

may be held liable, and abandonment of an employer's business - for which employers may not

be held liable.  Mullen. v. Horton, 46 Conn. App. 759, 767 (1997).

"In determining whether an employee has acted within the scope of employment, courts

look to whether the employee's conduct: (1) occurs primarily within the employer's authorized

time and space limits; (2) is of the type that the employee is employed to perform; and (3) is

motivated, at least in part, by a purpose to serve the employer." Harp v. King, 266 Conn. 747,

782-83 (2003); see also Restatement (Second), Agency § 228.  Here, there is no dispute that

Offerman's conduct occurred within the time and space limits of the employer.  Whether his

conduct was of the type that the Ducks employed him to perform and was motivated in part by a

purpose to serve the Ducks is disputed.

In Mullen v. Horton, the Appellate Court of Connecticut examined the line between mere

misguided efforts and abandonment of an employer's business.  46 Conn. App. at 764-771.

> Here, as in *Glucksman* and *Pelletier*, the trier of fact could reasonably have
> found that Horton's sexual relations with the plaintiff during their
> pastoral-psychological counseling sessions, were a "misguided effort" at
> psychologically and spiritually counseling the plaintiff, rather than an
> abandonment of the counseling. Just as the YMCA employee's assault on the
> basketball court in *Glucksman*, and the employee's assault on the customer
> who had littered in *Pelletier* represented extreme and clearly unauthorized
> methods of maintaining order and thereby furthering their employers'
> business, Horton's engaging in sexual contact with the plaintiff during
> counseling sessions also could represent an extreme and clearly unauthorized
> method of spiritually and emotionally counseling the plaintiff and thereby
> furthering the church's business.

Mullen, 46 Conn. App. at 767.  The court distinguished the above cases from Brown v. Housing

Authority, 23 Conn. App. 624 (1990), where a mechanic left his job route, followed the

plaintiff's car, and attacked the plaintiff with a hammer, finding that the mechanic "necessarily

abandoned his employer's business to pursue and attack the plaintiff."  Mullen, 46 Conn. App. at

769.  Street brawling with random members of the public has nothing to do with maintaining

machines, even when travel is part of the job.  There, the mechanic's violence was not

foreseeable because it was "in no way connected to the defendant's business."  Id.  Similarly, in

Gutierrez v. Thorne, 13 Conn. App. 493, 499 (1988), repeated sexual assaults by an employee

were held to have no connection to the defendant employer's business of training mentally

retarded persons regarding daily living skills.  Finally, in Nutt v. Norwich Roman Catholic

Diocese, 921 F. Supp. 66, 71 (D. Conn. 1995), the District Court held that a priest's showing

pornographic films to young boys and then criminally sexually molesting them in out-of-town

motel rooms could not reasonably be viewed as a mere misguided effort at pastoral counseling.

The priest had wholly abandoned his pastoral duties.

The location of the dividing line between the above sets of cases is significantly based on

the foreseeability of the unauthorized conduct in question.  Inappropriate sexual relations

between a psychological counselor and a client are somewhat predictable, as are physical

altercations during a basketball game, or even in a retail store, where employees are instructed to

prevent mischief on the premises.  Furthermore, "[a] master does not escape liability merely

because his servant loses his temper while he is conducting the master's business."  Pelletier v.

Bilbiles, 154 Conn. 544, 548 (1967).  This is especially true where the conduct is foreseeable or

expected.  Indeed, the Restatement (Second) of Agency § 245 provides:

A master is subject to liability for the intended tortious harm by a servant to the person or things of another by an act done in connection with the servant's employment, although the act was unauthorized, if the act was not unexpectable in view of the duties of the servant.

Comment:
a. Types of situations. **Whether or not an employment involves, or is likely to lead to, the use of force against the person or property of another is a matter of fact to be decided by the trier of fact.** Since opportunities and provocations arise in a great variety of ways, no attempt is made to make an exhaustive category of situations in which the master may be found liable. However, certain situations recur with sufficient frequency to call for mention. These occur when the servant: (a) acts in the protection of or recaption of his master's property, or (b) **in excess of zeal in competition**, or (c) **engages in a fight arising out of a dispute connected with his work for his employer**. In all of these situations the liability of the principal depends fundamentally upon the likelihood of a battery or other tort in view of the kind of result to be accomplished, the customs of the enterprise and the nature of the persons normally employed for doing the work. Thus, one who is sent to collect a bill does not normally make the employer responsible if he seizes money from the debtor, since this would be an unusual and unexpectable proceeding of a bill collector. On the other hand, one who is sent to recapture property is likely to come into contact with a possessor unwilling to surrender it, and persons sent to recapture goods are frequently of the kind who would be not unlikely to attempt force. Clearly the custodian of property is expected to use force to protect it from others seeking to gain possession, and the physical contact involved in the retention of possession is something which can clearly be anticipated. Again, whether or not it is within the scope of the employment of a teller in a bank to interfere in a fight between two customers, it normally is within the scope of employment of an employee of a tavern to interfere in the fighting between two inebriates. In the latter case, as also where a custodian is protecting property, the master is responsible for the use of somewhat more than the appropriate amount of force.

Restatement (Second) of Agency § 245 (emphasis supplied).

The Restatement lists three situations that recur with sufficient frequency to be mentioned. Two of the three, action in excess of zeal in competition and fighting arising out of a dispute connected with work for one's employer, apply here. In professional baseball, it is not unexpected for a batter to charge the mound after being hit by a pitch. While it may be unusual for the batter to bring his bat to the fight, Offerman's alleged digression from duty was not so

clear-cut that the disposition of the case becomes a matter of law.  Resolving all ambiguities and

drawing all permissible factual inferences in favor of plaintiff, the Court will allow the trier of

fact to determine whether a wilful tort of the servant has occurred within the scope of the

servant's employment and was done to further his master's business.  Therefore, defendant's

motion for summary judgment on the issue of respondeat superior will be denied.

**Liability as a Participant in Team Contact Sports**

Under Connecticut law, mere negligence is insufficient to create liability between co-

participants in a team contact sport.  Jaworski v. Kiernan, 241 Conn. 399, 412 (1997).  "[A]s a

matter of policy, it is appropriate to adopt a standard of care imposing on the defendant, a

participant in a team contact sport, a legal duty to refrain from reckless or intentional conduct.

Proof of mere negligence is insufficient to create liability."  Id.  "[A] recklessness standard will

sufficiently protect participants in athletic contests by affording them a right of action against

those who cause injuries not inherent in the particular game in which the participants are

engaged.  In other words, . . . the reckless or intentional conduct standard of care will maintain

civility and relative safety in team sports without dampening the competitive spirit of the

participants."  Id.

Despite plaintiff's claims of assault and battery, defendant contends that Offerman's

conduct toward plaintiff can only be construed as negligent because Offerman directed his bat at

Beech, the pitcher, not plaintiff, the catcher.  To the contrary, "[a]n act designed to cause bodily

injury to a particular person is actionable as a battery not only by the person intended by the actor

to be injured but also by another who is in fact so injured.  This principle of 'transferred intent'

applies as well to the action of assault.  And where one intends merely an assault, if bodily injury

results to one other than the person whom the actor intended to put in apprehension of bodily harm, it is battery actionable by the injured person." Alteiri v. Colasso, 168 Conn. 329, 334-35 (1975); see also Restatement (Second), Torts § 16.  The doctrine of transferred intent validates plaintiff's assault and battery counts as against Offerman.  Thus, the Ducks' attempt to characterize all of plaintiff's claims as mere negligence claims fails.  The reckless or intentional conduct duty of care standard for participants in team contact sports does not shield either Offerman or the Ducks from liability.  Therefore, defendant's motion for summary judgment will be granted as to the negligence count, but the assault and battery counts will remain.

**Punitive Damages**

Under Connecticut law, there is no vicarious liability for punitive damages.  Matthiessen v. Vanech, 266 Conn. 822, 837 (2003).  Therefore, defendant's motion for summary judgment as to punitive damages will be granted.

**CONCLUSION**

For the foregoing reasons, defendant's motion for summary judgment [Doc. #81] is GRANTED in part and DENIED in part.  Defendant's motion for summary judgment is DENIED on the issue of respondeat superior.  Defendant's motion for summary judgment is GRANTED as to count two, alleging negligence, but DENIED as to counts one and three, alleging assault and battery and reckless assault and battery respectively.  Finally, defendant's motion is GRANTED on the issue of punitive damages.

Dated this 5th day of February, 2013, at Bridgeport, Connecticut.


_____/s/_____
WARREN W.   EGINTON
SENIOR UNITED STATES DISTRICT JUDGE