UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOHNATHAN NATHANS, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | 3:09-cv-00256-WWE |
| | : | |
| JOSE OFFERMAN and | : | |
| THE LONG ISLAND DUCKS | : | |
| PROFESSIONAL BASEBALL CLUB, LLC | : | |

### MEMORANDUM OF DECISION ON POST TRIAL MOTIONS

At trial, plaintiff Johnathan Nathans asserted claims of assault and battery against defendant Jose Offerman, stemming from a melee that erupted during an August 2007 baseball game between defendant Long Island Ducks and the Bridgeport Bluefish. Nathans also claimed that the Ducks should be held vicariously liable based on the doctrine of respondeat superior, which holds an employer liable for acts of its agent where the agent acts within the scope of his employment and in furtherance of the employer's business.

The jury found Offerman liable for assault but not for battery and awarded Nathans $940,000 for past and future non-economic damages. The jury did not find the Ducks vicariously liable.

Nathans has moved for judgment as a matter of law or for a new trial on the issue of vicarious liability. Alternatively, Nathans argues that a new trial should be granted based on clear error in the jury charge.

Offerman has moved for judgment as a matter of law or for a new trial based on a perceived inconsistency between the assault and battery verdicts. Alternatively, Offerman joins Nathans in arguing that the Ducks should be held vicariously liable.

**DISCUSSION**

"Pursuant to Federal Rule of Civil Procedure 50(b), the court may enter judgment as a matter of law if a jury returns a verdict for which there is no legally sufficient evidentiary basis." Castelluccio v. International Business Machines Corporation, No. 3:09-cv-1145, 2014 WL 3696365 at *2 (D. Conn. July 23, 2014). "In deciding such a motion, the court must give deference to all credibility determinations and reasonable inferences of the jury . . . and it may not itself weigh the credibility of witnesses or consider the weight of the evidence." Galdieri-Ambrosini v. National Realty & Development Corporation, 136 F.3d 276, 289 (2d Cir. 1998).

"[J]udgment as a matter of law should not be granted unless (1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded persons could not arrive at a verdict against it." Id. (quoting Cruz v. Local Union No. 3, 34 F.3d 1148, 1154 (2d Cir. 1994)). See also, e.g., Kosmynka v. Polaris Industries, Inc., 462 F.3d 74, 79 (2d Cir. 2006) (citations omitted).

Similarly, although the standard for new trial under Rule 59 is more indulgent,

> [a] court considering a Rule 59 motion for a new trial must bear in mind, however, that the court should only grant such a motion when the jury's verdict is egregious. Accordingly, a court should rarely disturb a jury's evaluation of a witness's credibility.

DLC Management Corporation v. Town of Hyde Park, 163 F.3d 124, 133-34 (2d Cir. 1998).

**Nathans' Motion for Judgment as a Matter of Law or for New Trial**

Nathans argues that the Court should enter judgment as a matter of law on the basis that Offerman was acting within the scope of his employment when he assaulted Nathans. In the

alternative, Nathans seeks a new trial on the issue of agency.

"In determining whether an employee has acted within the scope of employment, courts look to whether the employee's conduct: (1) occurs primarily within the employer's authorized time and space limits; (2) is of the type that the employee is employed to perform; and (3) is motivated, at least in part, by a purpose to serve the employer." Harp v. King, 266 Conn. 747, 782-83 (2003).

With respect to the second factor, the substantive charge stated that the jury "may consider whether an assault of the type alleged by plaintiff was foreseeable in light of a professional baseball player's authorized duties, the customs of the game of baseball, and the nature of professional athletes." Nathans contends that it was not necessary for him to show the exact manner in which the assault occurred was foreseeable. Specifically, Nathans argues that the type of assault alleged was a baseball player assaulting another baseball player with a piece of baseball equipment.

The foreseeability determination of defendant Offerman's conduct hinges on the level of specificity used in describing that conduct. On one end of the spectrum, Offerman's conduct could be described generally - as a violent flare-up in the heat of the game. Violent, retributive outbursts are common in baseball; therefore, such conduct is foreseeable. On the other end of the spectrum, Offerman's conduct could be described specifically - as a deliberate attempt to inflict serious bodily harm on an opposing player by bludgeoning that player with a baseball bat. Such conduct is rare and arguably not foreseeable. Indeed, no witness in the case had ever personally witnessed a bat used in a baseball fight.

Ultimately, the specificity with which the issue of foreseeability and of scope of

employment were framed was determined by the evidence presented to the jury at trial. As Nathans himself argued in his opposition to defendant's motion for summary judgment, "[t]he question with regard to whether Jose Offerman was acting . . . within the scope of his employment with the Ducks and in the furtherance of their business *is one for a jury*." (Plaintiff's Memorandum in Support of Objection to Defendant's Motion for Summary Judgment dated December 17, 2012 at p. 17) [Doc. #87] (citing A-G-Foods, Inc. v. Pepperidge Farm, Inc., 216 Conn. 200, 207 (1990)) (emphasis added).

Here, the record contains significant evidence that Mr. Offerman's conduct did not benefit his team and was beyond the expectations of his employment. Accordingly, the Court will allow the jury's verdict to stand.

Nathans also asks the Court to grant a new trial because of clear error in the substantive charge on agency. Nathans contends that the Court erroneously omitted language that was critical to conveying to the jury the extent to which respondeat superior encompasses intentional torts. For example, the Court declined to include the following language:

> So long as the employee is not solely serving his own interests, actions that are unauthorized, disobedient, misguided, overzealous, unfaithful, unethical, forceful, and/or tortious may be committed within the scope of employment. Indeed, an employee who loses his temper and acts partially out of personal animosity may still be acting within the scope of his employment.

The validity of a charge turns on whether it properly informs the jury of the correct legal standard. BAII Banking Corporation v. UPG, Inc., 985 F.2d 685, 696 (2d Cir. 1993). A court will not upset a verdict due to error in a charge unless the court failed to sufficiently cover the essential issues. Id. "A new trial is warranted if, taken as a whole, the jury instructions gave a misleading impression or inadequate understanding of the law." Plagianos v. American Airlines,

4

Inc., 912 F.2d 57, 59 (2d Cir. 1990).

Moreover, as the Ducks point out, the Court did charge the jury as to an employer's liability with regard to unauthorized acts:

> The focus is on the relationship between the employee's conduct and the work he was hired to perform, *not the employer's approval of that conduct*. Even an innocent employer must compensate an injured party if the actions that caused the injury were committed within the scope of employment.
>
> With respect to [the second factor regarding whether an action was within the scope of employment], you may consider whether the conduct at issue, *although an unauthorized deviation from the employee's regular duties*, can be said to arise out of those duties.

The Court finds that the jury charge did not present a misleading impression or inadequate understanding of the law of agency. Accordingly, the Court will not grant plaintiff a new trial.

### Offerman's Motion for Judgment as a Matter of Law or for New Trial

Offerman argues that the jury's verdict should be set aside as inconsistent. Offerman faults the verdict because the jury found that an assault, but not a battery, occurred; and because the jury awarded a sum of money consistent with injuries caused by a battery - for which Offerman was found not liable.

> When confronted with a potentially inconsistent jury verdict, the court must adopt a view of the case, if there is one, that resolves any seeming inconsistency. Before a court may set aside a special verdict as inconsistent and remand the case for a new trial, it must make every attempt 'to reconcile the jury's findings, by exegesis if necessary.'

Turley v. Police Department of City of New York, 167 F.3d 757, 760 (2d Cir. 1999) (quoting Gallick v. Baltimore & Ohio R.R., 372 U.S. 108, 119 (1963)).

Plaintiff's opposition proffers that Offerman's assault could be viewed as a legal cause of

Nathan's injuries, both the but-for-cause and a substantial factor in the resulting injury, absent a finding of battery, namely because the battery charge stated that the "contact must be the direct and immediate consequence of force exerted by the defendant intentionally, wantonly or recklessly." In other words, Nathans' injury may have occurred at some point during the resulting melee where it was unclear whether it was the direct and immediate consequence of force exerted by Offerman.

Moreover, "[t]hough there be no battery, and therefore no physical hurt, still the law allows the jury to assess damages for the insult and indignity, and the hurt to the feelings and the mental suffering and the fright caused by the assault." Halio v. Lurie, 222 N.Y.S.2d 759, 762 (N.Y. App. Div. 1961) (citing cases from Indiana, Vermont, Texas, and Mississippi); See also Cohen v. Varig Airlines, S.A. Empresa de Viacao Aerea Rio Grandense, 380 N.Y.S.2d 450, 459 ("Mental injury without contemporaneous or consequential physical injury has long been a recognized element of damages in assault actions though there was no battery and no physical hurt . . ."). Indeed, American Jurisprudence, Second Edition, states:

> The prevailing view is that in an action for assault and battery, damages for mental suffering may be recovered regardless of whether the plaintiff received any physical injury.
>
> \*\*\*
>
> Mental suffering reasonably certain to be endured in the future and the cost of future psychological treatment may be taken into account in estimating the amount of damages to be awarded. Other elements that may be taken into consideration include the affront to the plaintiff's personality, and the indignity, disgrace, humiliation, and mortification to which the plaintiff was subjected by the defendant's conduct.

6 Am. Jur. 2d Assault and Battery § 139.

Offerman contends that the jury's award necessarily relates to injuries caused by a battery; however, the $940,000 awarded by the jury represents a small fraction of $4,800,000 Nathans sought in his original complaint. Moreover, $800,000 of the $940,000 award represents future non-economic damages. That is to say, taking into account actuarial life tables, both past and future non-economic award amount to less than $20,000 per year. Considering that Nathans' professional baseball career was abruptly cut short on the fateful day at issue, the damages awarded can be reconciled. That the jury did not necessarily find Offerman liable for Nathans' physical injury is no bar to recovery. Accordingly, Offerman's motion for judgment as a matter of law or for new trial will be denied.

## CONCLUSION

For the foregoing reasons, both Nathans' and Offerman's motions for judgment as a matter of law or for new trial are DENIED.

Dated this 31st day of March, 2014, at Bridgeport, Connecticut.


       /s/Warren W. Eginton
       WARREN W. EGINTON
       SENIOR UNITED STATES DISTRICT JUDGE